<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GULF INSURANCE COMPANY, : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> CEPS CONSTRUCTION CO., INC., : <br> *et al.* : <br>     Defendants. : | Civ. No. 03-5514 (GEB) <br><br><br><br><br> **MEMORANDUM OPINION** |
| COSIMO C. PEDICINI and : <br> ELISABETTA PEDICINI, : <br>     Defendants/Third Party Plaintiffs, : <br> : <br> v. : <br> : <br> FRANK S. DEWEY and SUZI DEWEY, : <br>     Third Party Defendants. : | |

**<u>BROWN, District Judge</u>**

      This matter comes before the Court upon Defendant/Third Party Plaintiff's motion and Third Party Defendant's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The Court decided the motions based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant/Third Party Plaintiff's motion is denied and Third Party Defendant's cross-motion is granted.

**I.      BACKGROUND**

This action was commenced on November 20, 2003 by Plaintiff Gulf Insurance Company ("Gulf Insurance"). Gulf Insurance brought suit against Defendants Cosimo and Elisabetta Pedicini ("Pedicinis") and Emile and Sandra Spadone ("Spadones") (collectively referred to as Defendants). Gulf Insurance, a bonding company, sought, *inter alia*, indemnification and exoneration from Defendants based on an Indemnity Agreement that was executed by all parties. Third Party Defendants Frank and Suzi Dewey ("Deweys") were also party to the Indemnity Agreement. Gulf Insurance, however, did not include Deweys as part of the initial lawsuit because they entered into a settlement agreement prior to the commencement of the action. (Dewey Certification, ¶ 2). Pedicinis and Spadones subsequently asserted cross-claims against each other and Third Party claims against Deweys, seeking contribution and indemnification.

In 1985, Cosimo Pedicini ("Pedicini") and Emile Spadone ("Spadone") formed CEPS Construction Co., Inc. ("CEPS Construction"), a specialty corporation engaged in the business of construction contracting. Frank Dewey ("Dewey") joined the corporation in 1996. Pursuant to the Stockholders' Agreement dated December 1, 1996, Pedicini, Spadone, and Dewey (collectively referred to as "the Stockholders") owned equal shares of the corporation. On August 1, 1997, the parties also entered into an Indemnification and Contribution Agreement ("the I&C Agreement") which established a right of contribution to a stockholder who is "required to guaranty the obligations of the Company to a customer or supplier . . . ." (Pedicini Certification dated Jan. 5, 2005 ("Jan. 5, 2005 Pedicini Cert."), Ex. B). The non-guaranteeing stockholders were required to proportionately share in the guaranty or "indemnify the guarantying Stockholder to the extent of their pro-rata interest in the Company . . . ." (*Id.*).

CEPS Construction subsequently changed its name to Centriline Construction Co., Inc. ("Centriline"). On April 10, 1997, the Stockholders signed a General Agreement of Indemnity with Gulf Insurance ("GI Indemnity Agreement") in exchange for Gulf Insurance's issuance of surety bonds on behalf of the corporation. Pedicini contends that during the period between 1999 and 2003, he was not involved in the day-to-day business of the corporation. Instead, he asserts that the majority of his time was spent defending a lawsuit on behalf of Centriline. Pedicini claims that Spadone and Dewey were responsible for managing the corporation. In April of 2003, Centriline notified Gulf Insurance that it did not have the necessary funds to complete work under certain bonded contracts. Centriline also lacked the financial resources to pay certain subcontractors and suppliers. As a result, numerous payment claims were made against the bonds, some of which were paid by Gulf Insurance. By initiating this action, Gulf Insurance sought indemnification from Pedicinis and Spadones for the losses incurred.

Since the commencement of this action, Gulf Insurance resolved all claims asserted in its initial Complaint after entering into separate settlement agreements with Spadones and Pedicinis. (*See* Consent Judgments dated Jan. 24, 2005 and Mar. 31, 2005). On February 23, 2005, the Court entered a consent order which dismissed all cross-claims between Pedicinis and Spadones. Additionally, on June 16, 2005, the Court was informed by letter from Deweys' Counsel that all Third Party claims by Spadones against Deweys have been resolved. With regard to Pedicinis' Third Party Complaint, the Court dismissed Count II by consent order dated February 23, 2005. Thus, the sole remaining claim in this action involves Count I of Pedicinis' Third Party Complaint regarding a claim for contribution and indemnification based on a pro rata share of the $200,000 settlement obtained by Gulf Insurance. The instant summary judgment motion addresses this claim.

## II.     DISCUSSION

### A.     Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on

4

a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. *See Celotex,* 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," *id.* at 322, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson*, 477 U.S. at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non- moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), *cert.*

*denied*, 507 U.S. 912 (1993).

### B. Pedicinis' Claim for Contribution and Indemnification by Deweys

Pedicinis assert that Deweys are obligated to pay a pro rata (one-third) share of the $200,000 settlement obtained by Gulf Insurance from Pedicinis and Spadones.[1] Specifically, Pedicinis contend that the Stockholders are jointly and severally liable for all guarantees signed by any of them, and if any one pays more than their pro rata share, he is entitled to a right of contribution from the other Stockholders. Pedicinis assert that this includes the Gulf Insurance settlement.

The Court notes that Pedicinis do not argue that the GI Indemnity Agreement itself creates a right of contribution. Instead, Pedicinis rely on two other agreements, namely 1) the Stockholders' Agreement executed on December 1, 1996 ("the Stockholders' Agreement") and 2) the I&C Agreement. (*See* Pedicini Reply at 5-6; Pedicini Certification dated Feb. 18, 2005 ("Feb. 18, 2005 Pedicini Cert."), Ex. A; Jan. 5, 2005 Pedicini Cert., Ex. B). The Court will examine each agreement in turn.[2]

First, Pedicinis point to Section 1, Paragraph (c) of the Stockholders' Agreement. When construing a contract, the court must give terms their "plain and ordinary meaning." *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002) (citation omitted). Additionally,

---

[1] Based on their calculation, Pedicinis argue that they are owed to $33,333.34.

[2] The Court first notes that, in its discretion, it may decline to exercise supplemental jurisdiction over this matter since the claims over which the Court had original jurisdiction have been dismissed. 28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996) (holding that the district court did not abuse its discretion in dismissing remaining state law claims after it dismissed all federal claims). However, in the interest of addressing Pedicinis' claims on substantive grounds, as opposed to procedural, the Court declines to do so.

if the contractual terms are clear, the court must "enforce the contract as written and not make a better contract for either party." *Graziano v. Grant*, 741 A.2d 156, 163 (N.J. Super. Ct. App. Div. 1999). Section 1, Paragraph (c) of this agreement states that the Stockholders would provide one-third of any additional capital that is necessary "in connection with the operation of the Business." (Feb. 18, 2005 Pedicini Cert., Ex. A). The provision indicates that the funds will be supplied by the Stockholders as a "loan to the Corporation." (*Id.*). The language of this provision indicates that it is not intended to cover payments made as part of a settlement in a lawsuit, which is what Pedicinis are seeking. Indeed, Pedicinis are seeking contribution or reimbursement from Deweys as opposed to a "loan." Therefore, the Court concludes that this agreement is inapplicable and Pedicinis' argument must be rejected.

Second, the Court finds Pedicinis' reliance on the I&C Agreement to be misplaced. The parties did not enter into this Agreement until August 1, 1997. The agreement upon which this suit is based, i.e., the GI Indemnity Agreement, did not come into effect until April 10, 1997. Absent any indication that the I&C Agreement was made to apply retroactively, the Court concludes that the GI Indemnity Agreement with Gulf Insurance falls outside the purview of the I&C Agreement.

Assuming *arguendo*, however, that the I&C Agreement did apply retroactively, the Court would nonetheless conclude Pedicinis' argument must fail based upon a plain reading of the I&C Agreement. In New Jersey, "indemnity agreements are interpreted in accordance with the rules governing the construction of contracts generally." *Vitty v. D.C.P. Corp.*, 633 A.2d 1040, 1042 (N.J. Super. Ct. App. Div. 1993). The relevant portion states:

> In the event any Stockholder of the Company is obligated to guarantee the obligations of the Company to any customer or supplier in connection with the performance of services, or the purchase of material or goods, by the Company (the "Guaranteeing Stockholder"), the other Stockholder(s) (the "Non-Guaranteeing Stockholders") hereby agree to assume their proportionate share of personal liability of such guarantee or, in the alternative, agree to indemnify and hold the Guaranteeing Stockholder(s) harmless to the extent of the Non-Guaranteeing Stockholder(s)' percentage ownership interest in the Company; it being the intent of the Stockholders that each Stockholder shall share equally in any such guaranty.

(Jan. 5, 2005 Pedicini Cert., Ex. B). The Court concludes that this provision would not apply here. The Agreement itself describes the type of situation when this provision is applicable – that is, when "one or more of the Stockholders are sometimes called upon by a customer or a supplier to personally guaranty the performance or payment obligations of the Company to such customer or supplier . . . ." (*Id.*) However, the GI Indemnity Agreement was entered into by all Stockholders. This is not a situation where one Stockholder was required to personally guaranty an obligation on behalf of the Company. Therefore, Pedicinis' argument must fail.

Pedicinis advance two additional arguments in support of their claim. Pedicinis cite *La Mar-Gate, Inc. v. Spitz*, 599 A.2d 928 (N.J. Super. Ct. App. Div. 1991), in support of their proposition that they are entitled to contribution from Deweys. This case, however, is inapplicable since it involves the liability of partners in a partnership. The individuals in this action are stockholders of a corporation, and therefore partnership law does not apply. Based on Pedicinis' failure to provide the Court with controlling authority that supports their proposition, this argument is also rejected.

Lastly, Pedicinis argue that they are entitled to contribution because Deweys have not actually paid money to Gulf Insurance as part of their settlement, but rather assumed Gulf Insurance's obligation to Dewcon, another company engaged in business with Gulf Insurance. Pedicinis

characterize the settlement as "nothing more than a sham" because the $77,000 claim was based on "back charges" that did not actually exist at the time of the settlement agreement between Gulf Insurance and Deweys. (Pedicinis' Br. in Support of Mot. for Summ. J. at 10-11). They further assert the agreements between Gulf Insurance and Dewcon did not clearly specify which party would be liable for "back charges." (*Id.*).

The Court notes that settlements are highly favored as a matter of public policy in New Jersey. *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990). The Supreme Court of New Jersey articulated that there must be clear and convincing evidence of fraud or other compelling circumstances before a court may vacate a settlement agreement. *Id.* Pedicinis fail to meet this stringent requirement. As part of the settlement, Deweys agreed "to assume responsibility to D[ewcon] for its $77,000 claim and to obtain D[ewcon]'s release of all claims against Gulf under the Completion Agreement, in exchange for release of [Deweys'] financial obligations under the Indemnity Agreement." (Dewey's 56.1 Statement, Ex. 1). Notwithstanding Pedicinis' assertions regarding the "back charges," the Court concludes that Pedicinis fail to present clear and convincing evidence that this settlement agreement should be vacated. In settling their claims with Gulf Insurance, Deweys have released Gulf Insurance of all claims asserted against it by Dewcon, and relieves it of a potential financial obligation of $77,000. The Court does not find that this agreement is sounded in fraud, and therefore must reject Pedicinis' argument.

Additionally, as a third party, Pedicinis do not have standing to challenge the sufficiency of the settlement between Gulf Insurance and Deweys. *See Jersey Shore Med. Ctr.-Fitkin Hosp. v. Baum's Estate,* 417 A.2d 1003, 1006 (N.J. 1980) (noting that litigants generally do not have standing to assert rights of third party unless he can show sufficient adverseness and personal stake). Having

9

concluded that Pedicinis do not have the right to contribution from Deweys, they fail to demonstrate that they have personal stake in the matter. Consequently, the Court rejects this argument.

Based on this Court's conclusion that there is no genuine issue of material fact regarding Pedicinis' claim they are entitled to contribution, summary judgment is granted in Deweys' favor.

### III.  CONCLUSION

For the foregoing reasons, Defendant/Third Party Plaintiff's motion is denied and Third Party Defendant's cross-motion is granted. The Court dismisses Pedicinis' Third Party Complaint in its entirety. An appropriate form of order accompanies this Memorandum Opinion.

Dated:       June 22, 2005

                                         s/ Garrett E. Brown, Jr.
                                         GARRETT E. BROWN, JR., U.S.D.J.